| Case No. | 2:14-cr-00684-CAS - 13 | Date | July 20, 2018 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Benjamin Barron, Not Present |
| --- | --- | --- |
| | | Christopher Kendall, Not Present |
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| OSCAR FLORES | NOT | X | | Charles Diamond | NOT | X | |
| | | | | Marisa Tashman Pro Bono | NOT | | |
| | | | | Daniel Ambar Pro Bono | NOT | | |

**Proceedings:** (IN CHAMBERS) - DEFENDANT OSCAR FLORES'S MOTION FOR PRETRIAL RELEASE OR, IN THE ALTERNATIVE, TO SEVER (Dkt. 1351, filed June 26, 2018)

## I. INTRODUCTION & BACKGROUND

On December 10, 2014 defendant Oscar Flores ("defendant") was arrested on charges of Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy (18 U.S.C. § 1962(d)), conspiracy to distribute controlled substances (21 U.S.C. § 846), and aiding and abetting possession with intent to distribute and distribution of controlled substances (21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)). Dkt 144. Defendant and 37 co-defendants were charged in a 45-count indictment targeting Big Hazard, a criminal street gang alleged to have close ties to the Mexican Mafia. Dkt. 1.

Defendant appeared before Magistrate Judge Carla M. Woehrle and was ordered detained. Dkt. 147. Judge Woehrle found that no condition or combination of conditions would reasonably assure the safety of the community and defendant's appearance, and that defendant had not rebutted by sufficient evidence the presumption provided by 18 U.S.C. § 3142(e)(3) based on the charged controlled substance offenses. Id. at 1–2. Judge Woehrle based her findings on the nature and seriousness of the offense; defendant's history of probation violations; defendant's history of failures to appear; defendant's prior criminal history; and that

defendant failed to proffer sureties sufficient to rebut the statutory presumption in favor of detention.  <u>Id.</u> at 3.

On May 4, 2017, defendant filed an application for bail review, requesting to be released on home detention with electronic monitoring and posting of a bond secured by his primary residence.  Dkt. 1134.  The Court denied the application on May 17, 2017.  Dkt. 1150.

On June 26, 2018, defendant filed the above-captioned motion for pretrial release, arguing that his prolonged pretrial detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  In the alternative, defendant moves to sever his case from that of his co-defendants pursuant to Federal Rule of Criminal Procedure 14.  Dkt. 1351 ("Mot.").  On July 2, 2018, the government filed an opposition.  Dkt. 1352 ("Opp'n").  On July 9, 2018, defendant filed a reply.  Dkt. 1353 ("Reply").  The Court held a hearing on July 16, 2018.  Having carefully considered the parties arguments, the Court finds and concludes as follows.

## II.   LEGAL STANDARDS

### A.   Due Process

The Bail Reform Act of 1984 directs courts to impose those conditions of pretrial release that "will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(c)(1)(B), and permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," <u>id.</u> § 3142(e).  Courts must consider several factors, including: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); <u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986).  A finding that there is a risk of flight need only be supported by a preponderance of the evidence.  <u>United States v. Motamedi,</u> 767 F.2d 1403, 1406 (9th Cir. 1985).  Where, as here, the statutory presumption applies, the burden of production of evidence shifts to the defendant, although the ultimate burden of persuasion remains with the government.  <u>United States v. Chen</u>, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992).

In <u>United States v. Salerno</u>, 481 U.S. 739 (1987), the Supreme Court upheld the Bail Reform Act against a facial due process challenge, holding that pretrial detention permitted under the Act constitutes a permissible regulation of liberty rather than impermissible punishment.  <u>Id.</u> at 747.  However, the Court noted it was expressing "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore

punitive, in relation to Congress' regulatory goal." Id. at 747 n. 4. The Ninth Circuit in United States v. Gelfuso, 838 F.2d 358 (9th Cir. 1988) stated that there is no bright-line rule to determine at "what point pretrial detention might be excessively prolonged," but rather the determination "requires assessment on a case-by-case basis." Id. District courts in this Circuit have focused on three factors in determining whether prolonged pretrial detention violates the due process rights a of a criminal defendant: "(1) the non-speculative length of expected confinement; (2) the extent to which the government (the prosecution and/or the court system) bears responsibility for pretrial delay; and (3) the strength of the evidence indicating a risk of flight, a threat to the trial process, and/or a danger to the community." United States v. Mukhtar, No. 2:12-cr-00004-MMD-GWF, 2012 WL 12953440, at *9 (D. Nev. July 17, 2012) (quoting United States v. Ailemen, 165 F.R.D. 571, 581 (N.D. Cal. 1996)).

    **B.**     **Severance**

Federal Rule of Criminal Procedure 8 provides that an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). When defendants are indicted together, there is a preference in the federal system for joint trials. Zafiro v. United States, 506 U.S. 534, 537 (1993); see also United States v. Lane, 474 U.S. 438, 449 (1986) (recognizing that joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial"). Under Federal Rule of Criminal Procedure 14, a joint trial of multiple defendants may be severed if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro, 506 U.S. at 541. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539.

## III.   DISCUSSION

Defendant contends that his continued detention violates due process, and requests to be released pending trial subject to electronic monitoring and posting of personal surety and property bonds in an amount not to exceed $50,000. The government asks the Court to reaffirm its two prior detention orders and argues that defendant's release would pose both a danger to the community and a risk of defendant's non-appearance. The parties have submitted a substantial evidentiary record, including police reports, wiretap transcripts and summaries, as well as several declarations including by defendant's private investigator and Dr. Bill Sanders, a gang expert. Having reviewed these materials, the Court finds that defendant's continued pretrial detention does not violate his due process rights.

The Court first considers "the non-speculative length of expected confinement." Ailemen, 165 F.R.D. at 581. Defendant has been detained for 43 months, and because the trial date has been continued to March 2019, the total length of expected confinement is approximately 52 months. Defendant notes some district courts have held that similar durations of pretrial detention violate due process. Mot. at 4; see, e.g., United States v. Rodriguez, No. 09-CR-331A, 2012 WL 6690197, at *1 (W.D.N.Y. Dec. 21, 2012) (holding that where defendant was charged with "drug activity, firearm possession, and gang-based racketeering related to his membership in a street gang," 55 months of pretrial detention "tend[ed] to make th[e] case the 'rare' instance when the total length of pretrial detention by itself offends due process."). However, "[w]hile the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and will rarely by itself offend due process." United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000). Rather, in cases where, as here, pretrial detention is expected to last more than two years, "the length of detention prong of the due process analysis weighs strongly in favor of releas[e]" and it therefore "follows that the other two prongs—government responsibility for delay and threats to the government's regulatory interests (flight/dangerousness)—will have to weigh strongly in favor of the government to justify continued detention." Ailemen, 165 F.R.D. at 582–83.

Second, the Court finds no support for defendant's contention that "government has had a significant hand in delaying" trial by stipulating to continuances, in part to meet its discovery obligations. Mot. at 5–6. There have been multiple stipulations to continue the trial date in this matter due to the "unusual and complex" nature of the case, "voluminous discovery," and numerous remaining co-defendants who have retained or appointed new counsel, several of whom have trial conflicts. See dkts. 355, 664, 668, 911, 1111, 1212. Defendant faults the government for producing supplemental discovery in October 2017 but makes no showing that this production has substantially contributed to the delay. On the contrary, it is worth noting that defendant bears some responsibility for delaying these proceedings—he is currently represented by his fifth attorney after firing or moving to terminate prior counsel throughout the case, dkts. 382, 978, 1282, 1291; he declined to enter a guilty plea several months after executing a plea agreement with the government, dkt. 922; and his conduct in court caused then-counsel to request a competency evaluation, dkt. 1314. The Court finds that the government bears little responsibility for the pretrial delay in this case, and accordingly this factor weighs strongly in its favor.

As to the third factor, the parties vigorously dispute the strength of the evidence indicating a risk of flight or danger to the community. Defendant is charged with a serious offense, namely, his membership and participation in the Big Hazard criminal enterprise, in support of which defendant allegedly engaged in and conspired to engage in the sale of controlled substances. Defendant argues that the evidence supporting these charges is at best circumstantial. Mot. at 8–16. However, the wiretap evidence indicates that defendant was in regular communication with co-defendant Fransisco Huerta, another alleged senior Big Hazard

member, regarding drug sales, drug manufacturing, and firearm sales.  See Opp'n, Exs. G, H, I. Defendant was also identified by a cooperating witness as the individual who delivered 8.7 grams of methamphetamine during a controlled purchase on December 4, 2012.  Id., Ex. J. Two cooperating witnesses identified defendant as a gang member going by the moniker "Zinc" and stated that he was involved in methamphetamine sales.  Id., Ex. L.  The government also seized several cell phones from defendant on the date of his arrest, which included text messages indicating his involvement in drug and firearms transactions.  Id., Ex. M.

Defendant's criminal history also supports a finding that there is a risk of flight and that he poses a danger to the community.  Defendant was arrested on two prior occasions following traffic stops during which officers found drugs in the vehicle, one of which resulted in his 2008 conviction for possession of methamphetamine with intent to distribute for which he received a two-year suspended sentence.  Id., Exs. A, B.  During a probation search of an apartment in November 2008, defendant allegedly lied to police officers, who seized baggies containing methamphetamine, a digital scale, small plastic baggies, and ammunition.  The officers also observed graffiti including defendant's gang moniker and noted that security cameras had been installed in the stairwell of the building, a security measure commonly used by drug traffickers. Defendant's probation was revoked and he received 270 days in jail.  Id., Ex. D.  Defendant was also arrested twice for violating the anti-gang injunction targeting Big Hazard and was observed with other documented gang members.  Id., Exs. C, E.

Based on the foregoing, the Court finds that weight of the evidence against defendant on the serious offenses charged in the indictment—together with his criminal history, including probation violations—strongly indicates that his release would pose a risk of flight and a danger to the community.  The Court further observes that defendant's conduct during these proceedings raises additional concerns regarding both the potential for his non-appearance and the danger he poses to the public.  Accordingly, this final factor weighs strongly in the government's favor.  Balancing the three factors articulated in Ailemen, 165 F.R.D. at 581, the Court finds that defendant's continued detention does not violate his due process rights.

Turning to defendant's alternative motion to sever, the Court finds no showing that defendant's joinder is prejudicial and accordingly severance pursuant to Rule 14 is not warranted.  As mentioned, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.  Although defendant contends there is a "gross imbalance" between the charges and the evidence against him and his co-defendants, the Court anticipates that the jury will be able to collate and appraise the individual evidence against each defendant, particularly with aid of instructions on the limited purposes for which certain evidence may be used. Defendant also has not identified a risk that his joint trial would compromise any particular trial right.  He relies primarily on United States v. Weygandt, No. 2:11-CR-00429-JAM, 2013 WL

812335 (E.D. Cal. Mar. 5, 2013). Although the court in that case noted the jury was likely to be confused due to the voluminous evidence and defendant's limited role in alleged conspiracy, the court's decision to sever was also based on a "serious concern" that the defenses presented at trial would be "mutually exclusive" and thereby deprive the defendant of his right to present an individual defense. Id. at *5. No such concerns have been raised in this case. Accordingly, in the exercise of its discretion, the Court declines to sever defendant's case.

## V. CONCLUSION

In accordance with the foregoing, defendant's motion for pretrial release or, in the alternative, to sever is hereby **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |