# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# CRIMINAL MINUTES – GENERAL     'O'

| Case No. | 2:14-cr-00684-CAS – 13 | Date | May 1, 2019 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Benjamin Barron, Not Present<br>A. Carley Palmer, Not Present<br>Lindsay Bailey, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Oscar Flores | Not | X | | Charles Diamond | Not | | X |
| | | | | Marisa Tashman | Not | | |
| | | | | Kaitlyn Gosewehr Melody | Not | | |
| | | | | Drummond Hansen | Not | | |

**Proceedings:** (IN CHAMBERS) - THE GOVERNMENT'S MOTION IN LIMINE NO. 1 TO EXCLUDE DEFENDANT'S 2010 PROBATION VIOLATION RECORDS AND FINDING (Dkt. 1619, filed on April 15, 2019)

**[UNDER SEAL]** THE GOVERNMENT'S MOTION IN LIMINE NO. 2 TO [REDACTED] (Dkt. 1620, filed on April 15, 2019)

THE GOVERNMENT'S MOTION IN LIMINE NO. 3 TO EXCLUDE OR RESTRICT DEFENSE EXPERT TESTIMONY (Dkt. 1621, filed on April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE DEFENDANT'S WITHDRAWN PLEA AGREEMENT (Dkt. 1625, filed on April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE DEFENDANT'S RESPONSE TO SERVICE OF GANG INJUNCTION (Dkt. 1626, filed April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE 2008 PRIOR CONVICTION AND UNDERLYING FACTS (Dkt. 1623, filed April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 4 TO EXCLUDE TEXT MESSAGE EVIDENCE (Dkt. 1627, filed April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 5 TO EXCLUDE A PDF DUPLICATE OF BUREAU OF PRISONS SIS FORM ON ACCOUNT OF SPOLIATION OF THE ORIGINAL (Dkt. 1628, filed April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 6 TO EXCLUDE LAPD FIELD IDENTITY CARDS (Dkt. 1629, filed April 15, 2019)

DEFENDANT'S MOTION IN LIMINE NO. 7 TO EXCLUDE ALLEGED FALSE STATEMENT TO LAPD (Dkt. 1622, filed April 15, 2019)

**[UNDER SEAL]** DEFENDANT'S MOTION IN LIMINE NO. 8 [REDACTED] (Dkt. 1637, filed April 15, 2019)

## I.  Introduction

In December 2014, defendant Oscar Flores and 37 co-defendants were charged in a 45-count indictment targeting Big Hazard ("Hazard"), a criminal street gang alleged to have close ties to the Mexican Mafia. Dkt. 1 ("Indictment"). The Mexican Mafia is a gang operating primarily in California's penal system. Manuel Jackson, one of Flores' co-defendants, is accused of controlling territory in East Los Angeles on behalf of the Mexican Mafia—territory that includes Hazard's gang territory. Id. at 12. Flores is accused of possessing methamphetamine for sale in Hazard territory and of selling approximately 8.7 grams of methamphetamine to a confidential informant. Id. at 21, 42. Specifically, the Indictment charges Flores in Count One with Racketeer Influenced Corrupt Organizations conspiracy ("RICO conspiracy"), in violation of 18 U.S.C. §1962(d); Count Four with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 841; and Count Thirty-Six with distributing at least five grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. § 2(a). Id. at 18, 57, 93. On January 23, 2019, the Court issued an order severing Flores's trial and continuing his trial date. Dkt. 1467. Flores's trial is scheduled to commence on May 14, 2019. Dkt. 1557.

In preparation for trial, Flores and the government have filed twelve motions in limine. The Court held a hearing on April 29, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. The Government's Motion in Limine to Exclude Flores's 2010 Probation Violation Records

At trial, the government's witnesses will testify that during a September 2010 probation search of Flores's home, police conducting the search: (1) found Flores in possession of a keychain inscribed with the words "Big Hazard"; (2) found $1,200 in cash in Flores's wallet; and (3) found drug trafficking tools, including a digital scale covered in crystalline residue and cameras monitoring the front and rear of Flores's home. Dkt. 1619 ("G. MIL #1") at 4. The government contends that this evidence is relevant and admissible to corroborate Flores's association with the Hazard gang and his involvement in drug trafficking. Id.

As a result of the probation search, Flores was arrested for violating the terms of his probation. Dkt. 1647 at 1. At that time, Flores was subject to probation terms which required him to stay away from known gang members and to not use or possess any narcotics or associated paraphernalia. Dkt. 1619-2 at 23. A hearing was held on October 7, 2010, before the Honorable William Sterling in the Superior Court for the County of Los Angeles, who found that Flores had not violated the terms of his probation. Dkt. 1647 at 1–2. Flores intends to introduce Judge Sterling's finding of "no violation" at his trial because, according to Flores, this finding undermines the government's contention that the seized items are probative of Flores's association with the Hazard gang and his involvement in drug trafficking. Id. at 4.

The government moves to exclude Judge Sterling's finding of "no violation" on the grounds that it is inadmissible hearsay, irrelevant, and unfairly prejudicial. Dkt. 1619. Given the government's representation that it does not intend to admit any evidence related to defendant's probation matters, the Court finds that the 2010 "no violation" ruling is irrelevant and should not be admitted. See Fed. R. Evid. 401, 402.

And even if Judge Sterling's finding were relevant, the Court may nonetheless "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury[.]" Fed. R. Evid. 403. The Court finds that offering this evidence would confuse and mislead the jury because Judge Sterling's ruling was made in the narrow context of deciding whether Flores violated his parole, not whether the seized items were probative of Flores's involvement in a broader criminal conspiracy.

The Court hereby **GRANTS** the government's motion in limine to exclude any criminal records offered by Flores regarding his 2010 state court probation proceedings.

## III. [UNDER SEAL] The Government's Motion in Limine to [REDACTED]

[REDACTED]

IV.    **The Government's Motion in Limine to Exclude or Restrict Defense Expert Testimony**

Flores intends to introduce testimony from three experts at trial. The proposed experts and their testimony are as follows: (1) Dr. Williams Sanders, a professor of sociology and criminology, who will testify that "Flores bears few if any of the markings of a likely gang member"; (2) Detective William Sera, who will testify that Flores's intercepted conversations "have other explanations than the criminal ones proposed by the government"; and (3) Detective Tim Gibson, who will testify that "holes, contradictions, and other flaws in the government's case result from failures to follow LAPD procedures and time-tested investigative techniques that distinguish mere suspects from the guilty." Dkt. 1650 at 1–2. The government moves to exclude or limit the testimony of Flores's experts. Dkt. 1621 ("G. MIL #3").

   A.    **Dr. William Sanders**

The government argues that a portion of Dr. Sanders's testimony should be excluded under Rule 403 as profile evidence. G. MIL #3 at 4 (citing United States v. Lui, 941 F.2d 844, 847 (9th Cir. 1991) (denouncing the use of expert testimony to establish whether a defendant meets the profile of a drug courier as substantive evidence of the defendant's innocence or guilt). Flores responds that Dr. Sanders will testify that Flores was not likely to have joined a gang because he came from an intact nuclear family, formed strong human connections, grew up feeling safe, had interests and preoccupations as a child, and has no history of domestic violence. Dkt. 1650 at 4. This testimony, according to Flores, is necessary to rebut the government's evidence that is allegedly probative of Flores's affiliation with the Hazard gang. Id.

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Here, Dr. Sanders plans to testify that Flores did not have the type of childhood or upbringing that would normally indicate a person's propensity to join a gang. This is indistinguishable from profile evidence—which cannot be admitted as substantive evidence of any defendant's innocence or guilt.[1] See Lui, 941 F.2d at 847. Although Flores contends that Sanders's testimony is in the same vein as typical expert testimony on indicia of gang membership, this comparison is inapt. Dr. Sanders plans to about whether Flores possesses (or lacks) the type of upbringing or other characteristics that fit the profile of a person who is likely

---

[1]    Flores also argues that Dr. Sanders's testimony is not "profile evidence" because Flores is not charged with being a member of the Hazard gang but rather with participation in a conspiracy with the Hazard gang. This argument is inapposite because Flores's association with the Hazard gang is probative of Flores's participation in the racketeering conspiracy with the Hazard gang.

to join a gang. The government's expert witness presumably plans to testify about whether evidence gathered from the government's investigation, such as the use of certain code words and insignia, reflects typical indicia of active gang membership. The former is inadmissible profile evidence, the latter is not.

The government also moves to exclude Dr. Sanders's noticed testimony that procedures used by law enforcement agents to identify gang membership are deeply flawed. G. MIL #3 at 10. The government represents that it will present independent evidence of Flores's relationship with the Hazard gang which the jury will assess in determining whether Flores participated in the charged conspiracies. The procedures used by law enforcement agents to identify gang membership appear to be irrelevant to the issues in this case and should be excluded on Rule 401 grounds.

Next, the government moves to exclude Dr. Sanders's noticed testimony "that association with gang members does not necessarily bespeak membership in a gang." Id. at 11. The government argues that this testimony would confuse the jury because Flores is charged with conspiring with the Hazard gang, not being a member in the gang. The Court finds that this expert testimony should be excluded on the grounds that this testimony concerns a common-sense notion that does not require expert illumination.

Accordingly, the Court **GRANTS** the government's motion in limine to exclude Dr. Sanders's expert testimony on Flores's probability of joining the gang, law enforcement procedures used to identify gang members, and whether associating with gang members indicates gang membership.

### B.     Detective William Sera

The government moves to exclude Sera's noticed testimony because it is cumulative and reaches conclusions on ultimate issues. In light of the Court's ruling excluding Dr. Sanders's testimony, the government's concern about the cumulative nature of Sera's noticed testimony is moot. And with respect to reaching conclusions on ultimate issues, Flores intends to have Sera testify that "based on his review of the government evidence, there was no indication that Mr. Flores participated in or had knowledge of the December 2012 controlled purchase" and that "text message evidence [seized from Flores's phone on his arrest] does not demonstrate that Mr. Flores participated in the distribution of drugs or weapons." Dkt. 1621-1 at 4. This testimony is inadmissible under Rule 704(b) as it constitutes an "opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). "Those matters are for the trier of fact alone." Id.

The government also moves to exclude Sera's noticed testimony in a supplemental expert disclosure sent to the government on April 20, 2019. Dkt. 1659. Sera intends to provide his opinion on topics such as the sufficiency of the government's discovery productions, the

propriety of the government's procedures when collecting and handling evidence related to this case, the significance of cell phone data when investigating an alleged gang conspiracy, whether the fact Flores was given a nickname is indicative of gang membership, whether Flores is sophisticated, and whether Flores is mentioned or can be heard himself on certain audio recordings. The Court finds that the noticed testimony described above is either irrelevant or invades the province of the jury and must be excluded.

However, at this juncture, the Court does not intend to exclude testimony from Sera that directly contradicts the testimony of the government's expert witnesses. Accordingly, the Court reserves ruling on the admissibility of Sera's testimony, except those portions which the Court has explicitly excluded above, until after the government's expert witnesses have testified at trial.

Accordingly, the Court **GRANTS** the government's motion to exclude Sera's testimony on whether Flores had knowledge of the December 2012 purchase and whether the text message evidence demonstrates that Flores participated in the distribution of drugs or weapons, as well as the portions of the noticed testimony in the April 20, 2019 supplemental expert disclosure. The Court reserves ruling on the remainder of the government's motion to exclude Sera's testimony until after the government's expert witnesses have testified at trial.

### C.    Detective Tim Gibson

Flores previously filed a motion to suppress wiretap evidence from Huerta's phone on the grounds that Officer Menesis allegedly orchestrated the transfer of the phone from Huerta to Flores during Huerta's arrest. The Court denied that motion and found that, given that both Huerta and Flores were named targets in the wiretap warrant, the manner by which the phone was transferred from Huerta to Flores was irrelevant for purposes of determining the admissibility of the wiretap evidence. Dkt. 1530 at 7.

At trial, Flores intends to have Gibson testify that Officer Meneses "acted contrary to standard investigatory practice and law enforcement procedures regarding preservation of evidence when he handed Mr. Huerta's phone to Mr. Flores at the time of Huerta's arrest, and that Officer Meneses' actions risked the loss or tainting of potential evidence on a cell phone that was already the subject of a wiretap in a gang investigation." Dkt. 1621-1 at 2. Based on this opinion, Gibson plans to testify that "on March 1, 2013, the wiretapped telephone belonging to Francisco Huerta was conveyed by LAPD officer Meneses to manufacture evidence against Oscar Flores to suggest his participation in a gang conspiracy and drug distribution" and that "the proper procedure for obtaining wiretap evidence against Mr. Flores would have been (at minimum) to request a telephonic approval from a magistrate to transfer Mr. Huerta's phone to Mr. Flores (followed by an appropriate written application) . . ." Id. at 2–3.

The government moves to exclude this testimony on the grounds that Flores is seeking to relitigate the suppression issue. The Court finds that the admissibility of the wiretap evidence is a legal issue which the Court has already decided, and that Gibson's proffered testimony is an impermissible collateral attack on that ruling. Moreover, the Court finds Officer Meneses's motivations when he allegedly transferred the phone from Huerta to Flores to be irrelevant to the issues in this case.[2]

And to the extent Flores intends to elicit testimony from Gibson about "the deficiencies and flaws in the investigation of Mr. Flores," the Court finds this testimony to be irrelevant as this is not a police misconduct case. See United States v. Olender, 338 F.3d 629, 638 (6th Cir. 2003) (affirming exclusion of defense expert criminologist testimony regarding purported flaws in the investigation). To the extent Flores wishes to challenge the propriety of the government's investigatory techniques, he may do so through cross examination.[3]

Accordingly, the Court **GRANTS** the government's motion to exclude Gibson's expert testimony.

## V.    Flores's Motion in Limine to Exclude His Withdrawn Plea Document

In 2016, Flores signed a written plea agreement in which he agreed to plead guilty to Counts One and Four of the Indictment and admitted to his criminal association with the Hazard Gang. See Dkt. 1630, Ex. B. Flores later withdrew from the plea agreement. Dkt. 1638, Ex. A. The government acknowledges that such evidence is inadmissible under Rule 410, and represents that it does not intend to use the plea agreement in its case-in-chief or to impeach defendant if he offers testimony contrary to his admissions in the plea agreement's factual basis. Dkt. 1642 at 3. The government, however, reserves its right to use the plea agreement to rebut

---

[2]    At hearing, counsel for Flores argued that Gibson's testimony is necessary to contradict the government's contention that Flores was Huerta's "order-taker." The Court finds that expert testimony about police procedures is unnecessary to establish the fact that Officer Meneses played some role in Flores's possession of Huerta's phone.

[3]    At hearing, counsel for Flores cited United States v. Sager, 227 F.3d 1138 (9th Cir. 2000), for the proposition that excluding evidence about flaws in the government's investigatory process is reversible error. However, counsel for Flores omitted the fact that Sager concerned the district court's curtailment of the defense counsel's examination of the government witness regarding investigatory details and the district court's instruction to the jury that it may not consider whether the investigation was flawed. Id. at 1146. Sager did not concern the exclusion of an expert witness and is therefore inapposite.

any false or misleading testimony that the defense introduces at trial, such as an assertion that Flores has consistently denied being associated with the Hazard gang. Id.

Flores moves to prevent the government from introducing, using, or referring to the withdrawn plea agreement for any purpose at trial. Dkt. 1625 ("F. MIL #1") at 3. The government argues that it may introduce otherwise inadmissible evidence "when the defendant 'opens the door' by introducing potentially misleading testimony." United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir. 1989). However, the Court finds that the probative value of this plea agreement would be substantially outweighed by unfair prejudice to Flores under Rule 403 if the government's questioning would reveal to the jury that Flores had entered into a plea agreement.

Accordingly, the Court **GRANTS** Flores's motion in limine to exclude his withdrawn plea agreement. The government may not introduce, use, or refer to the withdrawn plea agreement for any purpose at trial.

**VI.     Flores's Motion in Limine to Exclude His Response to Service of Gang Injunction**

On January 5, 2009, an LAPD Officer stopped Flores on a misdemeanor traffic warrant, took him into custody, and booked him at the LAPD's Jail Division. Dkt. 1626 ("F. MIL #2") at 3. Two hours after the stop and while Flores was still in custody, the same LAPD officer served Flores with a copy of the Big Hazard gang injunction that had been issued two years earlier. Id. Without reading Flores his Miranda rights or advising him of his right to counsel, the LAPD officer delivered the injunction to Flores and told him that he could be arrested for violating the gang injunction. Id. The LAPD form entitled "Record of Service" indicates that Flores responded to being served with this injunction by stating "OK." Id. There is no information about what question or statement, if any, Flores was responding to when he said "OK."

The government seeks to introduce Flores's statement, "OK," as evidence that—by failing to deny his association with Hazard in response to being served with this injunction—he has corroborated his membership with the Hazard gang. Dkt. 1651 at 2. The government contends that this statement is relevant non-hearsay under Rule 801(d)(2) as either an admission or an adopted admission by a party opponent. Flores seeks to exclude this evidence on the grounds that this statement was elicited in violation of Flores's Miranda rights and because the document does not make it clear what Flores meant when he said "OK." F. MIL #2 at 4.

Rule 801 provides that, where a party manifests an adoption or belief in the truth of a statement made by another, the manifestation may be admissible as a party admission. Fed. R. Evid. 801(d)(2)(B). However, before admitting a statement as an adoptive admission, the court must find that "sufficient foundational facts have been introduced for the jury to reasonably conclude that the defendant did actually hear, understand and accede to the statement." United

States v. Monks, 774 F.2d 945, 950 (9th Cir. 1985).  The Court finds that there appears to be no foundation for Flores's statement.  There is nothing in the record indicating what Flores was responding to when he said "OK."  Without any information about what Flores was asked before he said "OK," a jury could not reasonably conclude that Flores's statement manifested an adoption of the gang injunction's accusation that he was a member of the Hazard gang.

The Court also finds that this statement should be be excluded at trial because Flores was not read his Miranda rights prior to making the allegedly incriminating "OK" statement.  Generally, the obligation to give a Miranda warning applies only where an individual is both in custody and subject to interrogation.  Miranda v. Arizona, 384 U.S. 436, 477-78 (1966); United States v. Patzer, 277 F.3d 1080, 1085 (9th Cir. 2002).  It appears that Flores was in custody for Miranda purposes because he had only been arrested two hours earlier and was still in the booking process.  See United States v. Crawford, 372 F.3d 1048, 1059 (9th Cir. 2004) ("Whether a suspect is in custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.").  Next, although the government claims that the service of the gang injunction was merely an "administrative matter" and not an interrogation, this depiction is belied by the fact that the government now seeks to use Flores's statement to incriminate him.  If the LAPD officer's questions were designed to elicit a response that would constitute either an admission or denial of Flores's gang membership, Flores should have been read his Miranda rights.  See United States v. Hernandez, 476 F.3d 791, 796 (9th Cir. 2007) ("Interrogation is express questioning by the police or any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.") (internal quotation marks and citation omitted).

Accordingly, the Court **GRANTS** Flores's motion in limine to exclude his response to the service of a gang injunction.  The Court reserves ruling on whether the government may use this evidence for impeachment purposes.

### VII. Flores's Motion in Limine to Exclude 2008 Prior Conviction and Underlying Facts

In 2008, Flores was convicted by a jury for possession of methamphetamine for sale.  Dkt. 1648 at 1.  The Indictment describes the conduct underlying this conviction as Overt Act Number 2: "On June 14, 2007, defendant FLORES possessed methamphetamine for sale in Hazard territory."  Dkt. 1 at 21.  This conduct was allegedly committed by Flores "in furtherance of the [drug trafficking] conspiracy and to accomplish the objects of the conspiracy."  Id.

The government intends to introduce evidence of Flores's 2008 conviction, as well as the underlying conduct from June 2007, as direct evidence of Flores's participation in the RICO and drug trafficking conspiracy charged in this case.  Dkt. 1648 at 3.  Flores moves to exclude this evidence on the grounds that: (1) it is over ten years old and is therefore inadmissible under

Rule 609; (2) it constitutes improper character evidence under Rule 404(b); and (3) it is unfairly prejudicial under Rule 403.

The Court finds Flores's arguments to be unavailing. Rule 404(b) precludes evidence of a crime to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 609 sets out certain rules and limitations for "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609. Both rules are inapposite here because the government does not intend to use the 2008 conviction and its underlying conduct as character evidence. Rather, the government intends to use this evidence as direct evidence of the charged conspiracies and Flores's knowing participation in them. Next, with respect to prejudice, the Court observes that "relevant evidence is inherently prejudicial, but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000). Given that the 2008 conviction and the underlying 2007 drug transaction are directly relevant to an overt act in the Indictment, the Court finds that this evidence has probative value which is not outweighed by any unfairly prejudicial effect. However, the Court will nonetheless require a limiting instruction before the introduction of this evidence.

Accordingly, the Court **DENIES** Flores's motion in limine to exclude the 2008 prior conviction and underlying facts. The parties should meet and confer and propose to the Court an appropriate limiting instruction to address Flores's concerns regarding unfair prejudice.

## VIII.    Flores's Motion in Limine to Exclude Text Message Evidence

After Flores's December 10, 2014 arrest on the charges in this case, government agents seized his cell phone and obtained a federal search warrant for the phone. Dkt. 1645 at 1. Pursuant to this search, government agents extracted multiple text messages from the phone. Two text messages are the subject of Flores's motion in limine. Dkt. 1627 ("F. MIL #4"). Both text messages were sent to Flores's phone on December 10, 2014. The text messages state: "NEED AN 01 ACCORD. TELL THE YOUNG. STERS" and "ANY CUETES. FUSCAS FOR SALE." Id. at 3. The government's Hazard gang expert will testify at trial that "youngsters" is a coded term of art within Mexican Mafia-affiliated gangs to refer to young gang members, and that the modus operandi of the Hazard gang includes stealing cars—particularly Honda Accords—and then removing the cars' catalytic converters for black market sale. Dkt. 1645 at 1–2. The expert will also testify that the term "cuetes," which means "rockets" in Spanish, is common code used among the Hazard gang to refer to firearms. Id. at 2. Flores seeks to exclude these two text messages, arguing that they constitute inadmissible hearsay and are unfairly prejudicial. F. MIL #4 at 3.

The government contends that the text messages are not hearsay because: (1) the government does not intend to admit the text messages for the truth of any matter asserted but

rather as circumstantial evidence to undermine Flores's defense that he was not associated with the Hazard gang; (2) the text messages contain questions which do not assert the truth or falsity of a fact; and (3) the text messages are relevant to the state of the mind of the sender (which, according to the government, reflects the intent and plan of the sender to commit crimes in furtherance of the enterprise's goals). Dkt. 1645 at 7–9. To the extent that the text messages are not being admitted for the purpose of proving that Flores engaged in the criminal acts described in the text messages, the Court finds that the evidence does not constitute inadmissible hearsay. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Federal Rule of Evidence 801 advisory committee notes to the 1972 proposed rules. The Court also finds that this evidence has probative value which is not outweighed by any unfairly prejudicial effect.

Accordingly, the Court **DENIES** Flores's motion in limine to exclude the text message evidence.

## IX. Flores's Motion in Limine to Exclude a PDF Duplicate Bureau of Prisons SIS Form on Account of Spoliation of the Original

The Court previously suppressed on Sixth Amendment grounds a form prepared by the BOP Special Investigative Services ("SIS") unit reflecting an interview of Flores in which he allegedly admitted that he was a member of the Big Hazard gang. Dkt. 1530. However, the Court reserved ruling on whether the government could offer the SIS form for impeachment purposes. Id. at 12.

It appears that the government can only produce a PDF duplicate of the original SIS form because it is the BOP's practice to scan all documents, store them electronically, and then shred the paper copies. Dkt. 1649 at 2. Flores moves to exclude the PDF duplicate of the original SIS form because Flores's expert, Kurt Kuhn, a forensic document examiner, has concluded that it is highly improbable that Flores signed the form; according to Flores, this raises "genuine questions" about the authenticity of the original SIS form. Dkt. 1628 ("F. MIL # 5") at 3. Flores also contends that it would be unfair to allow the government to use the PDF duplicate at trial because his expert would not be able to conclusively deny or confirm that Flores signed the SIS form without access to the original document. Id. at 4.

Federal Rule of Evidence 1002 provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. However, Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine issue is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." A duplicate is defined as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Fed. R. Evid. 1001(e).

Rule 1004 further provides that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]"

Flores challenges the authenticity of the original SIS form by submitting a declaration from Kuhn which states: "I have compared [the signature on the SIS form] with twelve known specimens of Mr. Flores's writing, all prepared within 15 months of the questioned document. I am of the opinion that it is highly probable that Mr. Flores did not sign the SIS form." Dkt. 1628 at 8, ¶ 5. Flores did not submit any of the writing samples that Kuhn relied on in reaching his conclusion, nor has Flores submitted a declaration denying that he signed the SIS form. Although the Court finds that the evidence submitted by Flores is thin, the Court cannot conclude, at this juncture, that Flores has failed to raise a genuine issue as to the authenticity of the original SIS form. This issue, however, may be moot as the government has represented that it was only planning to use the SIS form to impeach Dr. Sanders, and the Court has excluded Dr. Sanders's expert testimony. However, in the event the government plans to rely on this evidence at trial, the Court will require an evidentiary hearing on the authenticity of Flores's signature on the SIS form and the basis of Kuhn's expert opinion.

Accordingly, the Court reserves ruling on Flores's motion to exclude the PDF duplicate of the SIS form on spoliation grounds.

## X.     Flores's Motion in Limine to Exclude LAPD Field Interview Cards

The government expects two law enforcement officers to testify regarding separate instances in which Flores allegedly admitted his Hazard gang membership to them. Dkt. 1643 at 1. These conversations were documented in field interview cards that the officers created shortly after each incident. Id. The government intends to use these field interview cards to either refresh witness memory under Rule 612 or, if necessary, as a recorded recollection under Rule 803(5). Id. at 2.

Flores moves to exclude the field interview cards under the assumption that the government will introduce the cards under the business records exception of Rule 803(6) in lieu of calling the law enforcement officers who authored those cards. Dkt. 1629 ("F. MIL #6"). In light of the government's clarification that it does not intend to rely on the business records exception to admit the field interview cards, the Court **DENIES** as moot Flores's motion in limine to exclude the field interview cards.

## XI.    Flores's Motion in Limine to Exclude Alleged False Statement to LAPD

On November 1, 2008, law enforcement officers found Flores in front of his apartment building, and Flores allegedly told the officers that he and his girlfriend were in the process of moving him out of his apartment. Dkt. 1646 at 1–2. Flores represents that during this encounter, Flores's girlfriend was roughly arrested for dropping a cigarette on the ground. Dkt.

1622 at 4. The officers then asked him which apartment he lived in, and Flores allegedly lied and told them he lived in apartment #5, when in fact, he lived in apartment #6. The officers told Flores that they were going to search his apartment pursuant to Flores's probation terms, and Flores allegedly "became very nervous" and "began sweating." Id. at 2. Upon searching Flores's apartment, the officers discovered Hazard gang graffiti, methamphetamine, small Ziploc baggies, a digital scale, 24 rounds of ammunition, and a surveillance system. Id. at 2–4. The government intends to present evidence of Flores's misrepresentation to police officers about the apartment he lived in, as well as his visible nervousness after he was told that police officers were going to search his home, as evidence demonstrating Flores's consciousness of guilt. Id. at 4. Flores moves to suppress this evidence as unfairly prejudicial. Dkt. 1622 ("F. MIL #7") at 4.

The Court finds that the limited probative value of this evidence is outweighed by the danger of unfair prejudice. See United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985) (even if the requirements for submitting statements showing consciousness of guilt are met, the evidence "may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice"). Given that Flores became nervous and made a misstatement during what appears to have been a tense situation between himself, his girlfriend, and the police, the Court finds that this evidence is not clearly probative of Flores's consciousness of guilt. See United States v. Williams-Hendricks, 805 F.2d 496, 500 (5th Cir. 1986) (holding that evidence of nervousness described in a police report should be excluded because such evidence "is insufficient to support a finding of guilty knowledge in the absence of facts suggesting that the defendant's nervousness or anxiety was other than a normal reaction to circumstances which one does not understand.").

Accordingly, the Court **GRANTS** Flores's motion in limine to exclude his alleged false statement to the LAPD and evidence of his nervousness.

### XII.    [UNDER SEAL] Flores's Motion in Limine to [REDACTED]

[REDACTED]

### XIII.    Flores's Motion in Limine to Exclude GPS Expert

As the Court indicated at the April 29, 2019 hearing, it will reserve ruling on Flores's motion in limine to exclude the GPS expert until after the May 7, 2019 hearing on this motion.

## VII. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the government's motion in limine to exclude any criminal records offered by Flores regarding his 2010 state court probation proceedings.

Subject to proper foundation, the Court will **GRANT** the government's motion in limine to [REDACTED].

The Court **GRANTS** the government's motion in limine to exclude Dr. Sanders's expert testimony on Flores's probability of joining the gang, law enforcement procedures used to identify gang members, and whether associating with gang members indicates gang membership.

The Court **GRANTS** in part the government's motion to exclude Sera's testimony on whether Flores had knowledge of the December 2012 purchase and whether the text message evidence demonstrates that Flores participated in the distribution of drugs or weapons, as well as the portions of the noticed testimony in the April 20, 2019 supplemental expert disclosure. The Court reserves ruling on the remainder of the government's motion to exclude Sera's testimony until after the government's expert witnesses have testified at trial.

The Court **GRANTS** the government's motion to exclude Gibson's expert testimony.

The Court **GRANTS** Flores's motion in limine to exclude his withdrawn plea agreement.

The Court **GRANTS** Flores's motion in limine to exclude his response to the service of a gang injunction. The Court reserves ruling on whether the government may use this evidence for impeachment purposes.

The Court **DENIES** Flores's motion in limine to exclude the 2008 prior conviction and underlying facts. The parties should meet and confer and propose to the Court an appropriate limiting instruction to address Flores's concerns regarding unfair prejudice.

The Court **DENIES** Flores's motion in limine to exclude the text message evidence.

The Court reserves ruling on Flores's motion to exclude the PDF duplicate of the SIS form on spoliation grounds.

The Court **DENIES** as moot Flores's motion in limine to exclude the field interview cards.

The Court **GRANTS** Flores's motion in limine to exclude his alleged false statement to the LAPD and evidence of his nervousness.

The Court **DENIES** Flores's motion in limine to [REDACTED].

The Court reserves ruling on Flores's motion in limine to exclude the GPS expert until after the May 7, 2019 hearing on this motion.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |